## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

FRANK KITCHELL,                          §
     Plaintiff,                      §
                                     §
v.                                       §     Case No. 4:06-cv-273
                                     §
ASPEN EXPLORATION, INC., et. al.,        §
     Defendants.                     §

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

Before the court are the following:

    1.  Defendants' Motion to Dismiss Plaintiff's Original Complaint Pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) (de #6),

    2.  Plaintiff's Response to Defendants' Motion to Dismiss Plaintiff's Original Complaint Pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) (de #8), and

    3.  Defendants' Reply to Plaintiff's Response to Defendants' Motion to Dismiss Plaintiff's Original Complaint Pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) (de #9).

Having considered the motion and the briefing responsive thereto, the court is of the opinion that Defendants' motion should be GRANTED IN PART and DENIED IN PART.

### I.  BACKGROUND

This diversity action arises out of a series of oil and gas investments made by Frank Kitchell ("Plaintiff") in and through Aspen Exploration, Inc., its agents, and various ventures managed by Aspen ("Defendants").  Plaintiff is an individual citizen of Washington State.  (Pl.'s Compl. ¶ 1.01.)  Greg Rand, the only individual defendant, resides in Texas.  (*Id*. at ¶ 1.03.)

Aspen Exploration, Inc. is a Texas corporation with its principal office in Texas.  (*Id*. at ¶ 1.02.)

The remaining sixteen defendants (the joint venture defendants) consist of the joint ventures

created among Aspen, Plaintiff and other investors, and are all Texas corporations, with each

maintaining its principal office in Texas.  (*Id*. at ¶¶ 1.02, 1.04-1.19.)  The amount in controversy

exceeds $75,000.  (*Id*. at ¶ 2.01.)

On May 3, 2001, Plaintiff sought advice from Aspen regarding other oil and gas

investments made by Plaintiff.  (*Id*. at ¶ 3.01.)  Plaintiff was referred to Aspen by an

acquaintance who had invested several million dollars through Aspen "with satisfactory results."

(*Id*.)  Plaintiff entered into a contract with Aspen described by Plaintiff as a "master joint

venture," which purports to govern the entirety of Plaintiff's relationship with Aspen.  (*Id*. at ¶

3.04.)

Plaintiff's first investment consisted of nearly $50,000 in Oakville No. 1, an Aspen-

sponsored oil and gas venture.  (*Id*.)  Over the following six weeks, Plaintiff invested a total of

over $440,000 in Oakville No. 1.  (*Id*. at ¶ 3.05.)  This well was never completed, and Plaintiff's

funds were never refunded.  (*Id*. at ¶ 3.06.)  Plaintiff was also persuaded to invest in the Texaco-

Schendel No. 1 well.  (*Id*. at ¶ 3.07.)  Over a two month course, Plaintiff invested nearly

$300,000 in this well, which returned just over $11,000.  (*Id*.)  On June 7, 2001, Plaintiff

invested $119,100 in the Aspen-Texaco Crews 2 oil well and received no return.  (*Id*. at ¶ 3.08.)

Plaintiff also invested over $550,000 through Aspen in the O'Connor J-1 well.  (*Id*. at ¶ 3.09.)

Rick Hardwick, an agent of Aspen, represented the O'Connor well as "monstrous" and

"incredible."  (*Id*.)  However, O'Connor J-1 proved to be a poor well, eventually being plugged.

(*Id*. at ¶ 3.10.)  Over the next four years, Plaintiff invested in twelve additional Aspen-sponsored

projects, bringing his total investment in Aspen-managed ventures to just over $2.75 million. (*Id*. at ¶¶ 3.14-3.32; Ex. 1-A.)  Pursuant to each venture, the parties executed a "Joint Venture Agreement." (*Id*. at ¶ 3.03.)  Completion of each well was the purpose of what appear to have been a series of partnerships, with Aspen as the managing partner authorized to transact partnership affairs and Plaintiff and other investors as partners.  (*Id*.)  The agreements provided that Aspen was to manage each project "in the best interest of the Joint Venture."  (*Id*.)  Every Aspen venture participated in by Plaintiff was unprofitable, and each could be fairly characterized as disastrous.

During the course of his relationship with Defendants, Plaintiff began to encounter a series of difficulties that helped to illuminate the losses produced by his investments.  On December 10, 2002, Plaintiff discussed the state of his investments with a Mr. Bramell, who had also invested substantially with Aspen.  (*Id*. at ¶ 3.17.)  Bramell informed Plaintiff that the O'Connor wells were the "poorest prospects Texaco had." (*Id*.)  Bramell was told by a Chevron representative (subsequent to Chevron's merger with Texaco) that the O'Connor wells were "not worth hooking up." (*Id*.)  In 2002, Plaintiff's interest in one project, the Rancho Blanco #2, inexplicably diminished by nearly 75%.  (*Id*. at ¶ 3.13.)  Several wells in which Plaintiff made investments were never drilled.  (*e.g.*, *Id*. at ¶ 3.15.)  Funds invested by Plaintiff in one particular project were never credited to that project; instead they were credited to a less successful project at Plaintiff's expense.  (*Id*. at ¶¶ 3.30-31.)

In December of 2004, Plaintiff and Defendants commenced negotiations that Plaintiff contends culminated in an oral agreement that nearly $1.75 million of Plaintiff's failed investment funds would be credited towards ownership in profitable Aspen ventures in order to

clean up the "mess" made of the investments.  (*Id*. at ¶ 3.40.)  No written agreement was ever

executed.  (*Id*.)  Beginning in late 2005, Plaintiff experienced great difficulty in contacting Aspen

and Rand regarding his relationship with them.  (*Id*. at ¶ 3.39.)  Moreover, Plaintiff flew to Texas

to meet with Rand, but Rand rebuffed Plaintiff, and the meeting never occurred.  (*Id*. at ¶ 3.41.)

Rand then made an appointment to meet Plaintiff in Seattle later that week but never showed up

for the meeting and never gave an explanation as to his absence.  (*Id*.)  Plaintiff then filed this

lawsuit seeking an accounting and asserting claims for fraud, negligent misrepresentation, breach

of the joint venture contracts, breach of the settlement contract, rescission, breach of the duty of

good faith and fair dealing, breach of fiduciary duty, and real estate fraud.  Defendants moved to

dismiss all claims pursuant to Rule 12(b)(6).  Defendants also argue that the fraud claims are not

stated with the particularity required by Rule 9(b).

## II.  LEGAL STANDARD

Motions to dismiss under Rule 12(b)(6) are disfavored and are rarely granted.  *Priester v.*

*Lowndes County*, 354 F.3d 414, 418 (5th Cir. 2004).  In passing on a Rule 12(b)(6) motion, a

court must accept all of the plaintiff's allegations as true.  *Ballard v. Wall*, 413 F.3d 510, 514 (5th

Cir. 2005).  A claim will survive an attack under Rule 12(b)(6) if "may be supported by

showing any set of facts consistent with the allegations in the complaint."  *Bell Atlantic Corp. v.*

*Twombly*, __U.S.__, 127 S. Ct. 1955, 1969 (2007).  In other words, a claim may not be dismissed

based solely on a court's supposition that the pleader is unlikely "to find evidentiary support for

his allegations or prove his claim to the satisfaction of the factfinder." *Id*. at n.8.  Although

detailed factual allegations are not required, a plaintiff must provide the grounds of its

entitlement to relief beyond mere "labels and conclusions"; "a formulaic recitation of the

elements of a cause of action will not do." *Id*. at 1964-65.

Rule 9(b), governing the pleading requirements for averments of fraud or mistake, provides that "the circumstances constituting fraud or mistake shall be stated with particularity." FED. R. CIV. P. 9(b).  While  the facts of each case will guide the courts in applying this standard, *Guidry v. Bank of LaPlace*, 954 F.2d 278, 288 (5th Cir. 1992), "[a]t a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (quoting *Tel-Phonic Servs., Inc. v. TBS Int'l., Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992).  While Rule 9(b) is to be applied "without apology," courts must take care not to obscure the liberal pleading standard contained in Rule 8(a), which is among the Rules' most indispensable commands. *Williams v. WMX Techs.*, 112 F.3d 175, 178 (5th Cir. 1997).

## III.  DISCUSSION AND ANALYSIS

Plaintiff has joined each joint venture in this action as a defendant.  The joint venture defendants assert that dismissal is proper as to them because Plaintiff attributes all of the conduct that is the basis of this lawsuit to defendants Aspen and Rand.  (Def.'s Mot. to Dismiss 4-6.) This argument is easily answered.  In his complaint, Plaintiff variously describes the entities as corporations, partnerships, and joint ventures.  The distinction is, however, irrelevant in this case. It is axiomatic that an agent's behavior serves to bind a disclosed principal in both tort and contract.  *E.g.*, *Holloway v. Skinner*, 898 S.W.2d 793, 795 (Tex. 1995) (corporation); TEX. BUS. ORG. CODE § 152.301 (partnership); *Texas Dep't. of Transp. v. Able*, 35 S.W.3d 608, 613 (Tex. 2000) (joint venture).  That both Rand and Aspen were the agents of the entity set up to run each

Aspen project is abundantly clear from both the contracts between Plaintiff and Aspen and Defendants' behavior.  As such, the acts of Rand and Aspen are clearly sufficient to bind the joint venture defendants, making improvident the dismissal of the Joint Venture Defendants solely on the basis that no acts were attributed directly to them.

## A.  Fraud

Plaintiff alleges fraud against all eighteen defendants.  The allegations center around statements made to Plaintiff in order to persuade Plaintiff to invest in each of the Aspen-sponsored oil wells.  Seeking to defeat the claims of fraud, Defendants argue that they are barred by the Texas statute of limitations.  (Def.'s Mot. to Dismiss 6-9.)  Plaintiff claims that the nature of the representations and the parties' relationship served to toll the statute of limitations, resulting in his fraud causes of action being asserted within the limitations period.  (Pl.'s Resp. to Def's Mot. to Dismiss 7.)

The elements of fraud in Texas are

(1) that a material representation was made;

(2) the representation was false;

(3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion;

(4) the speaker made the representation with the intent that the other party should act upon it;

(5) the party acted in reliance on the representation; and

(6) the party thereby suffered injury.

*In re First Merit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001).  In Texas, a cause of action for fraud must be brought within four years of the accrual of the claim.  Tex. Civ. Prac. & Rem.

CODE § 16.004(a)(4) (Vernon 2006).  Limitations generally begins on actions for fraud "when the fraud is perpetrated." *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 517 (Tex. 1988). However, Texas applies the discovery rule, tolling accrual of the cause of action "until the plaintiff knew or, exercising reasonable diligence, should have known of the facts giving rise to the cause of action." *Computer Associates Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996).  Application of the discovery rule is generally limited to those situations where the fraud results in inherently undiscoverable injury and the evidence thereof is objectively verifiable.  *Id.* at 456.  "The inherently undiscoverable requirement is satisfied when the nature of the injury is unlikely to be discovered even through due diligence." *Prieto v. John Hancock Mut. Life Ins. Co.*, 132 F. Supp. 2d 506, 513 (N.D. Tex. 2001) (quoting *Altai*, 918 S.W.2d at 455-56) (internal quotation marks omitted).  Plaintiff filed his Original Complaint on June 28, 2006.  Therefore, any claim for fraud that accrued on or before June 27, 2002 will be barred by the statute of limitations in the absence of circumstances that warrant application of the discovery rule.

Defendants argue that because Plaintiff never received an accounting and received only small returns on his investments from the commencement of his relationship with Defendants until June 27, 2002, Plaintiff was on inquiry notice that something was "amiss" regarding his investments.  (Def.'s Mot. to Dismiss 8-9.)  The crux of the argument is that any fraud was discoverable by the plaintiff in the exercise of due diligence.  Thus, the statute of limitations would have begun to run more than four years prior to the institution of this action, and the fraud claims should be barred.  However, Defendants overlook the fact that oil and gas investments are generally long-term affairs.  For a number of reasons, wells are often drilled years after an oil and gas lease is signed.  Thus, the reasonable oil and gas investor should not expect his investment to

always return profits instantly, or even within fourteen months.  Defendants do not cite, and the court cannot find, any case holding that a reasonable oil and gas investor is on inquiry notice that his investments have gone awry based solely on a fourteen month history of sparse returns.  The court, therefore, is not inclined to accept Defendants' argument that Plaintiff's injury was not inherently undiscoverable and thus that the statute of limitations began to run by June 27, 2002.

Plaintiff's meeting with fellow Aspen investor Bramell on December 10, 2002 was, however, sufficient to put Plaintiff on notice that his investments with Aspen may have been tainted by fraud.  Plaintiff was informed that the O'Connor wells developed by Aspen and Texaco "were the poorest prospects Texaco had."  (Pl.'s Compl. ¶ 3.17.)  These same wells were described by Aspen as "monstrous" and "incredible."  (*Id*. at ¶ 3.09.)  Moreover, Plaintiff's interest in the Rancho Blanco #2 had, by this time, inexplicably diminished from just over 9% to around 2.4%.  (*Id*. at ¶ 3.13.)  These circumstances, coupled with, as of December 10, 2002, more than nineteen months of minuscule returns were enough to put Plaintiff on notice that his dealings with Aspen were possibly tainted with fraud.  Thus, Plaintiff's injuries stemming from commercial relations with Aspen, as of December 10, 2002, were no longer inherently undiscoverable, thereafter depriving Plaintiff of the benefit of the discovery rule.  Because Plaintiff filed this lawsuit within four years of that date, all of his fraud causes of action were asserted within the limitations period.

Defendants next argue that many of Plaintiff's fraud claims fail to meet the heightened pleading requirement of Rule 9(b).  These arguments will be discussed on a project-by-project basis.  In some instances, Plaintiff alleges fraud based on statements made *after* making particular investments.  The court will not address these alleged statements because they could

not have been relied upon in deciding to make those investments, making them inappropriate as the basis of a fraud cause of action.  *In re First Merit Bank, N.A.*, 52 S.W.3d at 758 .

### Aspen Oakville #1

Defendants argue that Plaintiff has not adequately stated a fraud claim as to representations made regarding the Oakville #1 oil well.  Plaintiff alleges that Rick Hardwick made certain fraudulent representations about the quality of the oil field in which Oakville #1 was to be completed.  (Pl.'s Compl. ¶ 3.05.)  However, Plaintiff makes no allegation as to when the representations were made.  Therefore, his fraud cause of action against Aspen Oakville #1 must be dismissed as not satisfying the requirements of Rule 9(b).  *Benchmark*, 343 F.3d at 724.

### Aspen-Texaco Schendel #1

Plaintiff alleges that he was fraudulently induced into investing in the Schendel #1 well. (Pl.'s Compl. ¶ 3.07.)  However, Plaintiff has not stated where the alleged misrepresentation took place.  As such, his fraud claim against Aspen-Texaco Schendel #1 must be dismissed as not satisfying the requirements of Rule 9(b).  *Benchmark*, 343 F.3d at 724.

### Aspen-Texaco Crews #2

Plaintiff also alleges that his investment in the Crews #2 well was induced by fraud on the part of Aspen.  (Pl.'s Compl. ¶ 3.08.)  However, Plaintiff has not stated when the alleged misrepresentations took place.  Therefore, his fraud claim against Aspen-Texaco Crews #2 must be dismissed as not satisfying the requirements of Rule 9(b).  *Benchmark*, 343 F.3d at 724.

### Aspen-Texaco O'Connor J-1

Plaintiff also alleges that his investment in the O'Connor J-1 well was procured through fraudulent representations by Defendants.  (Pl.'s Compl. ¶ 3.09.)  Plaintiff refers the court to a

number of allegedly fraudulent statements made by Defendants in connection with Plaintiff's involvement in the O'Connor J-1 project.  However, at no point does Plaintiff state where the statements were made.  His fraud claim against Aspen-Texaco O'Connor J-1 must be dismissed as not satisfying the requirements of Rule 9(b).  *Benchmark*, 343 F.3d at 724.

*Aspen-Texaco O'Connor M-1*

Plaintiff alleges Defendants to have fraudulently induced him into investing in the O'Connor M-1 well.  (Pl.'s Compl. ¶ 3.14.)  However, Plaintiff never states when or where the potentially fraudulent representations were made.  As such, his fraud claim against Aspen-Texaco O'Connor M-1 must be dismissed as not satisfying the requirements of Rule 9(b).  *Benchmark*, 343 F.3d at 724.

*Aspen-Texaco O'Connor Young #1*

Plaintiff alleges that his investment in the O'Connor Young #1 project was attracted by fraudulent misrepresentations.  (Pl.'s Compl. ¶ 3.15.)  Again, Plaintiff has not stated when or where the allegedly fraudulent statements were made.  His fraud claim against Aspen-Texaco O'Connor Young #1 must be dismissed as not satisfying the requirements of Rule 9(b).  *Benchmark*, 343 F.3d at 724.

*Aspen-Texaco O'Connor C-2*

Plaintiff alleges Defendants to have obtained his investment in the O'Connor C-2 well through fraud.  (Pl.'s Compl. ¶ 3.16.)  Plaintiff again has failed to state where any of the alleged misrepresentations were made.  As such, his fraud claim against Aspen-Texaco O'Connor C-2 must be dismissed as not satisfying the requirements of Rule 9(b).  *Benchmark*, 343 F.3d at 724.

*Aspen Rancho Blanco #2*

Plaintiff avers that his investment in the Rancho Blanco #2 well was solicited by fraud. (Pl.'s Compl. ¶ 3.18.)  However, no allegations as to where any of the misrepresentations were made are contained in the pleadings.  Plaintiff's fraud claim against Aspen Rancho Blanco #2, therefore,  must be dismissed as not satisfying the requirements of Rule 9(b).  *Benchmark*, 343 F.3d at 724.

*Aspen Eubank #1*

Plaintiff next alleges that he was induced by Defendants' fraud to invest in the Eubank #1 oil well.  (Pl.'s Compl. ¶ 3.19.)  However, Plaintiff has not alleged where any of the statements were made, warranting dismissal of his claim against Aspen Eubank #1 as failing to comply with the requirements of Rule 9(b).  *Benchmark*, 343 F.3d at 724.

*Aspen-Phillips 66 Bastian Bay #1*

Plaintiff also alleges that his investment in the Bastian Bay #1 project was secured through fraud on the part of Defendants.  (Pl.'s Compl. ¶ 3.24.)  However, Plaintiff states the place of making as to none of the related alleged misrepresentations.  His fraud claim against Aspen-Phillips 66 Bastian Bay #1 must be dismissed as not satisfying the requirements of Rule 9(b).  *Benchmark*, 343 F.3d at 724.

*Aspen-Rancho Blanco #3*

Plaintiff alleges that his investment in the Rancho Blanco #3 well was obtained by fraud. (Pl.'s Compl. ¶ 3.25.)  Plaintiff made his investment in the well in two stages.  The first investment was apparently based on representations by Rand that the oil field on which Rancho

Blanco #3 was completed had received serious interest by other oil exploration companies.  (*Id.*)

No allegation as to the time or place of this statement, however, is contained in the pleadings.

The later investment was made based on a conversation between Plaintiff and Rand at an airport

in Seattle.  (*Id.* at ¶ 3.26.)  Plaintiff, however, has not alleged the statements on which he relied.

The complaint merely states that Plaintiff gave Rand a check "based upon Rand's

representations."  Without specifying the contents of the representations, Plaintiff has not

satisfied the pleading requirements of Rule 9(b).  Therefore, his fraud claim against Aspen-

Rancho Blanco #3 must be dismissed as not satisfying the requirements of Rule 9(b).

*Benchmark*, 343 F.3d at 724.

### Monte Christo-Morris #1

Plaintiff next alleges fraud in the solicitation of his investment in the Morris #1 project.

(Pl.'s Compl. ¶ 3.28.)  Again, Plaintiff has failed to allege where the statements were made.

Thus, his fraud claim against Monte Christo-Morris #1 must be dismissed as not satisfying the

requirements of Rule 9(b).  *Benchmark*, 343 F.3d at 724.

### Aspen-Cayenne

Plaintiff alleges that he was induced by Defendants' fraudulent representations to invest

in the Cayenne project.  (Pl.'s Compl. ¶ 3.29.)  Plaintiff fails to allege the place the statements

were made.  His fraud claim against Aspen-Cayenne must be dismissed as not satisfying the

requirements of Rule 9(b).  *Benchmark*, 343 F.3d at 724.

### Aspen-Rancho Blanco #4

Plaintiff makes no allegation that his investment in the Rancho Blanco #4 project was

obtained by fraud.  (*See* Pl.'s Compl. ¶ 3.30.)  However, he does allege that the money he

intended to invest in Rancho Blanco #4 was deposited into the books of the Rancho Blanco #5

oil well.  Because Plaintiff does not allege a fraudulent statement in connection with the Aspen-

Rancho Blanco #4 oil well, his fraud claim against it does not meet the standards of Rule 9(b),

warranting dismissal.  *Benchmark*, 343 F.3d at 724.

### Aspen-Rancho Blanco #5

Plaintiff alleges that he was convinced by Defendants' fraud to invest in the Rancho

Blanco #5 project.  (Pl.'s Compl. ¶ 3.31.)  However, Plaintiff does not assert the place where the

statements were made.  Thus, his fraud claim against Aspen-Rancho Blanco #5 must be

dismissed as not satisfying the requirements of Rule 9(b).  *Benchmark*, 343 F.3d at 724.

### Aspen-South Cottonwood Creek

Finally, Plaintiff alleges that he was fraudulently induced into investing in the South

Cottonwood Creek oil well.  (Pl.'s Compl. ¶ 3.32.)  Plaintiff again fails to allege where the

fraudulent statements were made.  His fraud claim against Aspen-South Cottonwood Creek  must

be dismissed as not satisfying the requirements of Rule 9(b).  *Benchmark*, 343 F.3d at 724.

### Aspen Exploration and Greg Rand

Because each of the statements on which Plaintiff relies for his causes of action against

the joint venture defendants were made by either Greg Rand or another representative of Aspen

Exploration, and because each of those statements is deficient under Rule 9(b) as discussed

above, the fraud claims against Rand and Aspen must be dismissed as well.  *Benchmark*, 343

F.3d at 724.

## B.  Negligent Misrepresentation

Plaintiff also alleges a claim for negligent misrepresentation.  (Pl.'s Compl. ¶ 5.01.)  In order to determine the fate of this claim, the court must first decide whether the heightened pleading requirements of Rule 9(b) also apply to the negligent misrepresentation claim.  Rule 9(b), by its terms, applies only to "averments of fraud or mistake."  The Fifth Circuit Court of Appeals has countenanced application of Rule 9(b) to other claims when those claims are intertwined with claims of fraud.  *Shushany v. Allwaste, Inc.*, 992 F.2d 517, 520 n.5 (5th Cir. 1993); *Williams v. WMX Techs.*, 112 F.3d 175, 177 (5th Cir. 1997); *Benchmark*, 343 F.3d at 723. However, the Fifth Circuit has since issued an unpublished opinion that overturned the application of Rule 9(b) to a negligent misrepresentation claim.  *Am. Realty Trust, Inc. v. Hamilton Lane Advisors, Inc.*, 115 Fed. Appx. 662, 668-69. (5th Cir. 2004) ("Rule 9(b)'s stringent pleading requirements should not be extended to causes of actions not enumerated therein."). The court distinguished *Williams*, *Benchmark*, and *Shushany*, arguing that each of those plaintiffs "failed to distinguish their negligent misrepresentation claims," waiving the argument that Rule 9(b) was inapplicable thereto.  *Am. Realty Trust*, 115 Fed. Appx. At 668 n.30.  The *American Realty Trust* plaintiffs, on the other hand, did distinguish their fraud and negligent misrepresentation claims.  *Id*.

While seemingly disharmonious with prior case law, *American Realty Trust* merely helps to craft the borders of the rule that emerges out of the *Shushany* line of cases.  Where a plaintiff states both claims of fraud and negligent misrepresentation, Rule 9(b) governs the pleading requirements of the negligent misrepresentation claim if "(1) a plaintiff waives arguments to the contrary or (2) the inadequate fraud claim is so intertwined with the negligent misrepresentation

claim that it is not possible to describe a simple redaction that removes the fraud claim while leaving behind a viable negligent misrepresentation claim." *Am. Realty Trust, Inc. v. Travelers Cas. & Sur. Co.*, 362 F. Supp. 2d 744, 752 (N.D. Tex. 2005).  Rule 9(b) will not apply to a claim of negligent misrepresentation simply because a plaintiff also states a claim of fraud.  However, when the two claims are factually inseparable, Rule 9(b) does govern the pleading requirements of the "intertwined" non-fraud-based claim.  *Travelers*, 362 F. Supp. 2d at 752.

Where the district court has stripped away the inadequate averments of fraud and left only allegations that are inadequate to support a claim of negligent misrepresentation, dismissal as to the negligent misrepresentation claim is proper because the burden of separating the factual bases of each claim is better left to the party responsible for the deficient pleading.  *Id.*; *accord Lone Star Ladies Inv. Club v. Schlotzsky's, Inc.*, 238 F.3d 363, 368 (5th Cir. 2001).  In the case at bar, Plaintiff simply incorporates the fraud-based allegations against Defendants and attaches another label to them.  Therefore, once the inadequate averments of fraud have been disregarded, *Id.*, not only is not possible to look to facts in support of Plaintiff's claim, *nothing* is left of Plaintiff's Original Complaint to support a claim of negligent misrepresentation.  Therefore, Plaintiff's negligent misrepresentation claim fails for the reasons each of its fraud claims fail.

## C.  Breach of Contract–Joint Venture Agreements

Plaintiff also alleges that Defendants breached the Joint Venture Agreements entered into with Plaintiff.  (Pl.'s Compl. ¶ 6.01.)  Specifically, Plaintiff claims that Defendants, by making unauthorized transfers, failing to give proper accountings, sending false bills, and misappropriating Plaintiff's funds, acted contrary to the Agreements.  (*Id*. at 6.02.)  Plaintiff also

demands an accounting to determine the extent to which the contracts were breached.  (*Id.*)
Defendants argue that these claims fail under the applicable statute of limitations and, in the
alternative, that Plaintiff waived any breaches of the contracts.  (Def.'s Mot. to Dismiss 10, 23-
24.)

A plaintiff has four years from the accrual of a breach of contract claim to bring such an
action.  TEX. CIV. PRAC. & REM. CODE § 16.004 (Vernon 2006); *Via Net v. TIG Ins. Co.*, 211
S.W.3d 310, 312 (Tex. 2006).  The discovery rule, discussed above, is applicable in breach of
contract actions.  *See Id.*  Whether the discovery rule applies in a given case is an issue of law to
be decided by the court.  *S.V. v. R.V.*, 933 S.W.2d 1, 8 (Tex. 1996); *Moreno v. Sterling Drug,
Inc.*, 787 S.W.2d 348, 351 (Tex. 1990); *San Antonio Credit Union v. O'Connor*, 115 S.W.3d 82
(Tex. App.—San Antonio 2003, pet. denied).  The Supreme Court of Texas has not been
receptive to discovery rule arguments made in actions resulting from arms-length transactions.
*Id.*at 314; *HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 888 (Tex. 1998); *Wagner & Brown v.
Horwood*, 58 S.W.3d 732, 737 (Tex. 2001).  Although the court is inclined to give Plaintiff the
benefit of the discovery rule for his fraud claims, his actions do not warrant extension of such
with regard to these breach of contract claims.  As discussed above, the fact that Plaintiff's
investment generated meager returns in the first fourteen months of the parties' relationship was
insufficient, standing alone, to put Plaintiff on inquiry notice that his investments were procured
by fraud.  However, Plaintiff must have been aware that his money was being put to use in this
time.  For example, Plaintiff sent funds as completion costs to Aspen in furtherance of the
Oakville #1 project on August 16, 2001.  (Pl.'s Compl. ¶ 3.06.)  In addition, Plaintiff received
returns on the Schendel #1 investment as early as November 5, 2001, just six months from the

beginning of the parties' relationship. (*Id*.)  These transactions reveal that Plaintiff was aware that his funds were being used by Defendants in furtherance of the exploration projects.  A reasonable investor, knowing that his funds were being spent, would certainly want to know the nature of the expenditures made therewith.  The alleged breaches in the instant case are analogous to those held in *Wagner & Brown* not to trigger the discovery rule.  *Wagner & Brown*, 58 S.W.3d at 737 (holding that alleged royalty miscalculations are not inherently undiscoverable).  As such, the discovery rule was not triggered with respect to Plaintiff's breach of contract claims.  Therefore, any breach of contract claims that accrued on or before June 27, 2002 are barred.

Next at issue is whether Plaintiff, by his actions, waived any subsequent breaches of the Joint Venture Agreements.  Waiver, an affirmative defense in Texas, "can be asserted against a party who intentionally relinquishes a known right or engages in intentional conduct inconsistent with claiming that right."  *Tenneco, Inc. v. Enterprise Prods. Co.*, 925 S.W.2d 640, 643 (Tex. 1996).  Waiver can be established by either express agreement or "silence or inaction" sufficient to manifest an intention to forego the known right.  *Id*.  While waiver is generally a fact question, it becomes a question of law "[w]here the facts and circumstances are admitted or clearly established."  *Id*.  At this stage, the facts do not support a finding that Plaintiff's behavior so clearly indicates an intentional waiver of the alleged breaches of contract as to conclude that Plaintiff waived the alleged breaches as a matter of law.  In *Tenneco*, the court blessed the defendants' defense of waiver based on three years of complete inaction by the plaintiffs in the face of the defendants' breach of contract.  This case is different because Plaintiff has made a series of efforts, sometimes met with curious inaction on the part of Defendants, to seek

clarification regarding his relationship with Defendants.  Moreover, *Tenneco* was an appeal of a reversal of the trial court's grant of summary judgment.  *Id.* at 643.  The parties had engaged in discovery and were able to develop the issues of the case.  This decision, however, is on a motion to dismiss pursuant to Rule 12(b)(6), and the granting of such motions is "disfavored."  *Priester*, 354 F.3d at 418.

Defendants, citing *LSR Joint Venture No. 2 v. Callewart*, also claim that by accepting tax benefits, Plaintiff waived relief from any breaches of contract.  (Def.'s Mot. to Dismiss 24.)  *LSR*, however, merely stands for the proposition that receipt of tax benefits *may be relevant* in determining whether waiver occurred.  *LSR Joint Venture No. 2 v. Callewart*, 837 S.W.2d 693 (Tex. App.—Dallas 1992, writ denied).  There, the court simply determined that the amount of the tax benefit was relevant to whether a waiver occurred.  *Id.* at 700.  Because the court had already determined that a tax benefit was received, *Id.* at 699, its focus on the admissibility of the value of that benefit indicates that receipt of a tax benefit does not, *per se*, amount to waiver.  Plaintiff, therefore, is entitled to proceed with his claims for breach of the Joint Venture Agreements that accrued on or after June 28, 2002.

## D.  Breach of Contract–Settlement Agreement

Plaintiff also argues that he entered into a settlement agreement with Defendants whereby Defendants would give Plaintiff $1,747,000 towards ownership in "new or additional interests," in consideration of prior mismanagement of Plaintiff's funds.  (Pl.'s Compl. ¶ 7.02.)  In order to succeed on this claim, Plaintiff must prove the existence of a valid contract.  *Wright v. Christian & Smith*, 950 S.W.2d 411, 412 (Tex. App. —Houston [1ˢᵗ Dist.] 1997, no writ).  Defendants

argue that they did not intend the settlement agreement to be binding, and that therefore there was no valid contract.  (Def.'s Mot. to Dismiss 25.)  Whether the parties manifested assent to a binding contract is a fact issue that will need to be further developed.  As this case stands, the existence of a binding settlement agreement would certainly be "consistent with the allegations in the complaint."  *Bell Atlantic*, 127 S. Ct. at 1969.  Thus, Plaintiff's claim that Defendants breached the settlement agreement should not be dismissed.

## E.  Rescission

Plaintiff, in the alternative, seeks rescission of the Joint Venture Agreements.   (Pl.'s Compl. ¶ 8.02.)  Defendants argue that rescission would be improper because Plaintiff has failed to exercise due diligence upon discovery of the alleged breaches of contract.  (Def.'s Mot. to Dismiss 25.)  Rescission is an equitable remedy that allows a court to set aside a contract induced by fraud or mistake or to avoid unjust enrichment.  *Martin v. Cadle Co.*, 133 S.W.3d 897, 903 (Tex. App.—Dallas 2004, pet. denied).  The four-year statute of limitations applies to claims for rescission.  TEX. CIV. PRAC. & REM. CODE § 16.051 (Vernon 2006).  For the same reasons that the court declines to find that Plaintiff has waived his breach of contract claims, the court declines to hold that Plaintiff has acted with such little diligence as to vitiate his right to seek rescission of the Joint Venture Agreements.  Plaintiff, therefore, is entitled to pursue rescission of the contracts where his claims have not been barred by the applicable statute of limitations.

## F.  Breach of the Duty of Good Faith and Fair Dealing

Plaintiff further asserts that Defendants' actions breached the duty of good faith and fair dealing owed to Plaintiff.  (Pl.'s Compl. ¶ 9.01.)  Defendants contend that this claim is barred by

limitations.  (Def.'s Mot. to Dismiss 11.)  The parties agree that the statute of limitations for a claim of breach of the duty of good faith and fair dealing is two years.  Tex. Civ. Prac. & Rem. Code § 16.003(a) (Vernon 2006); *Provident Life and Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003).  The discovery rule applies to the duty of good faith and fair dealing. *Abe's Colony Club, Inc. v. C & W Underwriters, Inc.*, 852 S.W.2d 86, 91 (Tex. App.—Fort Worth 1993, writ denied).  For the same reasons discussed in Part III.A, *supra*, Plaintiff's injury based on the alleged breach of the duty of good faith and fair dealing was inherently undiscoverable until his conversation with Bramell on December 10, 2002.  However, Plaintiff did not file this lawsuit until June 28, 2006.  Given that the statute of limitations is only two years, any claim for Defendants' breach of the duty of good faith and fair dealing that accrued on or before June 27, 2004 is barred by limitations.  All other such claims accruing thereafter were timely asserted.  Plaintiff is entitled to continue his pursuit of those claims.

## G.  Breach of Fiduciary Duty

Plaintiff next asserts that Defendants' actions constituted a breach of fiduciary owed by them to Plaintiff.  (Pl.'s Compl. ¶ 9.01.)  Defendants urge the court to dismiss this claim pursuant to the statute of limitations.  (Def.'s Mot. to Dismiss 12.)  The statute of limitations for a claim of breach of fiduciary duty is four years.  Tex. Civ. Prac. & Rem. Code § 16.004(a)(5) (Vernon 2006).  The discovery rule applies to claims for breach of fiduciary duty.  *Slusser v. Union Bankers Ins, Co.*, 72 S.W.3d 713, 718 (Tex. App.—Eastland 2002, no pet.).  For the same reasons discussed in Part III.A, *supra*, Plaintiff's injury based on the alleged breach of fiduciary duty was inherently undiscoverable until his conversation with Bramell on December 10, 2002.  Therefore, the statute of limitations is not an impediment to Plaintiff's claim for breach of

fiduciary duty.

## H.  Real Estate Fraud

Finally, Plaintiff presses a claim of real estate fraud against Defendants.  (Pl.'s Compl. ¶ 12.02.)  Defendants argue that Plaintiff has not alleged participation in any real estate transaction to support such a claim.  (Def.'s Mot. to Dismiss 26.)  Section 27.01 of the Texas Business and Commerce Code gives a claim to those who have been victimized by fraud in a real estate or corporate stock transaction.  TEX. BUS. & COMM. CODE  § 27.01(a) (Vernon 2006).  Aspen and its affiliates sold units of ownership in various partnerships to Plaintiff.  Plaintiff argues that the partnerships perpetuated a fraud and should be disregarded.  (Pl.'s Resp. to Def.'s Mot. to Dismiss 18.)  Plaintiff cites no authority for his proposition.

The United States District Court for the Northern District of Texas encountered a similar circumstance in *Marshall v. Quinn-L Equities, Inc.*  There, the court held that the purchase of partnership interests did not implicate Section 27.01, even though the partnership was organized, as here, for the development of real property interests.  *Marshall v. Quinn-L Equities, Inc.*, 704 F. Supp. 1384, 1392 (N.D. Tex. 1988).  Because partnership interests are personal property, TEX. BUS. ORG. CODE  § 154.001, the purchase and sale of such cannot serve to support a claim for real estate fraud under Section 27.01.  *See Am. Title Ins. Co. v. Byrd*, 384 S.W.2d 683, 685 (Tex. 1964) (holding that Vernon's Ann. Civ. Stat. art. 4004, predecessor to Section 27.01, is inapplicable to a contract for title insurance because the contract is merely incidental to a real estate transaction).  Accordingly, Plaintiff's real estate fraud claim should be dismissed.

## IV.  CONCLUSION

Based on the foregoing, Defendant's Motion to Dismiss is granted in part and denied in part as follows:

Defendant's Motion to Dismiss with regard to Plaintiff's fraud claims is GRANTED.

Defendant's Motion to Dismiss with regard to Plaintiff's negligent misrepresentation claims is GRANTED.

Defendant's Motion to Dismiss with regard to Plaintiff's breach of contract claims with regard to the Joint Venture Agreements is DENIED.

Defendant's Motion to Dismiss with regard to Plaintiff's breach of contract claim with regard to the parties' settlement agreement is DENIED.

Defendant's Motion to Dismiss with regard to Plaintiff's claim for rescission is DENIED.

Defendant's Motion to Dismiss with regard to Plaintiff's claims for breach of the duty of good faith and fair dealing is DENIED.

Defendant's Motion to Dismiss with regard to Plaintiff's claims for breach of fiduciary duty is DENIED.

Defendant's Motion to Dismiss with regard to Plaintiff's real estate fraud claim is GRANTED.

Because Plaintiff states in his Response to Defendants' Motion that his only claim against South Cottonwood Creek is for fraud, and because that claim has been dismissed, that defendant should be, and is, hereby, DISMISSED from this lawsuit.

IT IS SO ORDERED.
**SIGNED this the 28th day of September, 2007.**

_Richard A. Schell_
RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE